**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NUETERRA CAPITAL ADVISORS, LLC, NUETERRA HOLDINGS MANAGEMENT, LLC and NUETERRA HEALTHCARE MANAGEMENT, LLC, Plaintiffs, v. AMY LEIKER and TRIPLE AIM CREATIVE, LLC, Defendants. | Case No. ________________ |

# VERIFIED COMPLAINT

Nueterra Capital Advisors, LLC, Nueterra Holdings Management, LLC and Nueterra Healthcare Management, LLC ("Nueterra") file this verified complaint for breach of confidentiality agreements, breach of fiduciary duty, misappropriation of trade secrets, violation of the federal Defend Trade Secrets Act, violation of the Computer Fraud and Abuse Act, misappropriation of corporate opportunities, unfair competition (at common law and under the Lanham Act), and tortious interference. Nueterra seeks an immediate restraining order and injunctive relief prohibiting its former employee, Amy Leiker, and the business Leiker secretly formed while still a Nueterra employee, Triple Aim Creative, LLC, from further using, disseminating, and disclosing Nueterra's "Triple Aim Trade Secrets" (defined herein at ¶16, *infra*). These Triple Aim Trade Secrets were developed and designed by Nueterra's marketing department team under Leiker's supervision. Nueterra asks that Leiker and her business be immediately stopped from their continued unauthorized misuse of these Triple Aim Trade Secrets, including being required to take down their offending website and LinkedIn page.

## PARTIES

1. Plaintiff Nueterra Capital Advisors, LLC is a Kansas limited liability company, Plaintiff Nueterra Holdings Management, LLC is a Delaware limited liability company, and Plaintiff Nueterra Healthcare Management, LLC is a Delaware limited liability company. All three Plaintiffs (collectively "Nueterra") have their principal place of business in Leawood, Kansas.

2. Defendant Amy Leiker ("Leiker") resides and may be served at 9441 Redbud Lane, Lenexa, Kansas 66220, which is also the address for the Resident Agent and Registered Office of Defendant Triple Aim Creative, LLC. Leiker is a former employee of Nueterra Capital Advisors and Nueterra Holdings Management whose employment was terminated on or about June 7, 2017.

3. Defendant Triple Aim Creative, LLC is a Kansas limited liability company formed by Leiker on or about January 17, 2017, while she was still an employee of Nueterra Capital Advisors. Triple Aim Creative, LLC's principal place of business and registered office is located at 9441 Redbud Lane, Lenexa, Kansas 66220, and its resident agent is Leiker. Upon information and belief, Leiker formed Triple Aim Creative, LLC for the purpose of competing against Nueterra and began undertaking her competitive activities, including misappropriation of Nueterra's intellectual property, even before her June 7, 2017 termination.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) because Nueterra asserts claims arising under the laws of the United States, including 18 U.S.C. § 1836(b) (Defend Trade Secrets Act); 18 U.S.C. § 1030(g) (Computer Fraud and Abuse Act); and 15 U.S.C. §1125 (Lanham Act). This Court has supplemental jurisdiction over

all other claims alleged herein because they form part of the same case or controversy under Article III of the United States Constitution and 28 U.S.C. § 1367.

5. Personal jurisdiction and venue properly lie in this Court. The parties reside or have their principal places of business in Johnson County, Kansas, and the acts and events on which Nueterra's claims are based took place in Johnson County, Kansas.

## FACTUAL BACKGROUND

6. Nueterra develops, owns, and manages various healthcare facilities, including ambulatory surgery centers and community hospitals, throughout the United States. Nueterra has expanded its business to provide a host of services to those facilities and unaffiliated healthcare facilities and organizations. These services include, without limitation, marketing services. Nueterra's marketing team works with a broad range of companies, healthcare providers, and service companies, as well as corporate leaders, providing growth strategies and comprehensive marketing services with the goal of driving long-term expansion and success. Among the marketing services Nueterra provides or seeks to provide are the following:

- Strategic planning
- Branding and identity collateral
- Website development
- Print and online ad development
- Media and public relations
- Governmental affairs
- Video and radio production
- Event planning and management

7. Defendant Leiker served as the Vice President of Marketing and Public Affairs for Nueterra Capital Advisors from January 2014 through April 30, 2017, and for Nueterra Holdings Management, LLC from May 1, 2017 to June 7, 2017. She was highly compensated.

8. Leiker was responsible for direction and oversight of the entire marketing department, including overseeing the creative and design teams, director of on-line marketing, event planners, and communications specialists.

9. In her position and as a requirement of her duties, Leiker had constant access to proprietary and confidential information about Nueterra's marketing plans and methods, clients, and business practices.

## LEIKER'S CONFIDENTIALITY AGREEMENTS WITH NUETERRA

10. When she began employment with Nueterra, on or about January 6, 2014, Leiker signed the attached "Nueterra HIPAA and Confidentiality Agreement" (Ex. A) and "Confidentiality Agreement" (Ex. B) -- (collectively, the "Confidentiality Agreements").

11. Under the Nueterra HIPAA and Confidentiality Agreement, Leiker agreed that she had "no right or ownership interest" in any "Confidential Information" of Nueterra and would "appropriately safeguard Confidential Information so as to prevent any inappropriate use or disclosure." Leiker agreed that such "Confidential Information" included Nueterra's "Business Operations Information." Leiker agreed that any "use or disclosure of Confidential Information for any reason other than the performance of [her] assigned job duties" "constitute[s] misuse of Confidential Information." And she agreed that her "obligations under this Agreement will continue after termination of [her] relationship (employment or otherwise) with Nueterra." (Ex. A.)

12. Under the "Confidentiality Agreement," Leiker specifically acknowledged that she would "have access to and learn of unique and valuable information" of Nueterra during her employment, "the disclosure of which would injure Nueterra." Leiker specifically agreed not to use or disclose such "Proprietary Information," including but not limited to "any information relating to marketing or the marketing methods or business plan of Nueterra," "information concerning services, . . . styles, . . . strategies, . . . customers, . . . advertising, promoting, . . . and sales," and "any other information that is determined to be confidential or proprietary by Nueterra," with the understanding that even "[i]nformation that is not novel or copyrighted may nonetheless be proprietary information." (Ex. B.)

13. Leiker agreed that violations of the "Confidentiality Agreement" could be the subject of an enforcement action and that the "prevailing party in such dispute shall be entitled to collect such party's fees and costs from the other party, including without limitation court costs and reasonable attorneys' fees." (Ex. B.)

## LEIKER'S FAITHLESS, SECRETIVE, AND BREACHING ACTIVITIES

14. During late 2016, while Leiker was an employee of Nueterra, being highly compensated by Nueterra, owing fiduciary duties and a duty of loyalty to Nueterra, and subject to the aforementioned Confidentiality Agreements with Nueterra, the Nueterra marketing team Leiker was responsible for overseeing developed certain business plans and intellectual property under the moniker "Triple Aim," including tradenames, logos and marks. These tradenames, logos and marks were the exclusive and proprietary intellectual property and confidential business information of Nueterra. All of the persons involved in creating the tradenames, logos, and marks were employees of Nueterra Capital Advisors and/or Nueterra Holdings Management.

15. Leiker and another member of the marketing team also developed a written, 6-page "Business Plan" entitled "Triple Aim Creative – Targeted Healthcare Marketing" (hereinafter the "Triple Aim Business Plan"). This Triple Aim Business Plan was the confidential and proprietary business information and trade secret of Nueterra, developed by the Nueterra marketing team while they were employed by, paid by, and subject to confidentiality agreements with Nueterra.

16. The combination of the "Triple Aim" tradename, logos, and marks, the Triple Aim Business Plan, and other documents, logos, marks, designs, strategies, and ideas associated with same (collectively the "Triple Aim Trade Secrets"), were confidential and proprietary business information and trade secrets of Nueterra.

17. As noted above, on or about January 17, 2017, while Leiker was still employed by Nueterra, being highly compensated by Nueterra, owing fiduciary duties to Nueterra and a duty of loyalty as an employee, and subject to the aforementioned Confidentiality Agreements with Nueterra, Leiker secretly formed for herself and for her own personal benefit a company she called Triple Aim Creative, LLC (the other named Defendant in this matter). Leiker is the sole owner of Triple Aim Creative. Upon information and belief, Leiker formed Triple Aim Creative, LLC in January 2017, while still an employee of Nueterra, with the intention and for the purpose of competing against Nueterra and making unauthorized and competitive use (for her own private benefit and to Nueterra's detriment) of the Triple Aim Trade Secrets, including the proprietary and confidential names, marks, and logos that the Nueterra Capital Advisors employees and marketing team had developed and designed.

18. In forming Triple Aim Creative, LLC, Leiker in fact made unauthorized use of the "Triple Aim Trade Secrets," using for her own personal benefit the work of her Nueterra

colleagues and the proprietary and confidential names, logos, and marks the Nueterra marketing team had developed under her supervision.

19. Leiker began undertaking these unlawful and competitive activities, including misappropriation of Nueterra's intellectual property, before her June 7, 2017 termination.

20. Upon information and belief, while still employed by Nueterra, Leiker was planning to steal the Triple Aim Trade Secrets from Nueterra.

21. Leiker's employment with Nueterra was terminated on or about June 7, 2017.

22. At the time of her termination, Leiker did not return to Nueterra the Nueterra-owned Microsoft Surface Pro tablet device that had been issued to her. Leiker did not have permission to take or use the device. Leiker was told to immediately return the device to Nueterra. Leiker refused to do so. Nueterra sent Leiker a written follow-up demand for the device. Leiker persisted in her refusal to return the device. (Ex. C, letter from Nueterra demanding return of device.)

23. At some point, Leiker established a website and LinkedIn page for Triple Aim Creative, LLC, on which she is pictured, utilizing the Triple Aim Trade Secrets, including the name, marks, and logos developed by the Nueterra marketing team under Leiker's supervision while Leiker was still working for Nueterra. (Ex. D, print-screens of Triple Aim Creative website and LinkedIn page established by Leiker.)

24. According to the website and LinkedIn page, Triple Aim Creative, LLC's specialties include the same or similar services as the Nueterra marketing department and team that Leiker oversaw at Nueterra, including "Marketing Strategy, Digital Marketing, Event Planning, Media Relations and PR, Video and Radio Production, Branding and Identity

Collateral, Print and Online Ad Development, Strategic Planning and Budgeting, SEO/SEM, Social Media Marketing, Content Strategy, Copywriting, and Reputation Management."

25. Upon information and belief, Leiker utilized the Nueterra-owned Microsoft Surface Pro tablet device or the laptop she was using while employed at Nueterra to form and establish Triple Aim Creative, LLC, to develop and launch her competitive website and LinkedIn page, and to make unauthorized use and disclosure of the Triple Aim Trade Secrets.

26. On August 18, 2017, counsel for Nueterra sent a letter to Leiker's counsel, once again demanding return of the Nueterra-owned Microsoft Surface Pro tablet device. Leiker returned the device to Nueterra's offices on Monday, August 21, 2017, following an apparent attempt on her part to "wipe clean" the data on the device.

27. The identities and contact information for Nueterra-affiliated facilities and other Nueterra actual or potential customers, and the marketing needs of those facilities and customers, were among the proprietary and confidential information to which Ms. Leiker had access while employed with Nueterra. Upon information and belief, Ms. Leiker has been making use of this proprietary information, as well as using Nueterra's intellectual property (e.g., the Triple Aim Trade Secrets), to contact and solicit business from Nueterra-affiliated facilities or Nueterra's other actual or potential customers.

## COUNT I
### BREACH OF CONFIDENTIALITY AGREEMENTS – AGAINST LEIKER

28. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

29. The documents Leiker signed agreeing to maintain the confidentiality of Nueterra's information are valid and enforceable agreements. In the agreements, Leiker made various promises as outlined above, including promises not to use or disclose Nueterra's

proprietary and confidential information during her employment with Nueterra or after that employment terminated.

30. All conditions precedent to Leiker's obligations under the agreements have been waived or satisfied.

31. Leiker has breached the agreements by intentionally using and disclosing Nueterra's proprietary and confidential information, as set forth above.

32. As a direct result of Leiker's breach of her Confidentiality Agreements, Nueterra has been injured and damaged in an amount to be determined at trial, has been irreparably harmed, and has no adequate remedy at law and is threatened with additional and continuing irreparable harm if Leiker is not enjoined as set forth in the Prayer for Relief herein, including but not limited to changing the name of Triple Aim Creative, LLC, taking down the offending website and LinkedIn page, and stopping Defendants' other unauthorized use and disclosure of the Triple Aim Trade Secrets.

## COUNT II

## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY – AGAINST LEIKER

33. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

34. While an employee of Nueterra, Leiker had a fiduciary duty and a duty of loyalty to Nueterra, including but not limited to the duty not to use or disclose for her own benefit or Nueterra's detriment Nueterra's confidential business information, intellectual property, or trade secrets.

35. As set forth above, while still employed by Nueterra, Leiker breached her fiduciary duty and duty of loyalty to Nueterra by secretly forming for herself and her own benefit and to Nueterra's detriment Triple Aim Creative, LLC, with Leiker as its owner and operator, and using Nueterra's confidential business information, intellectual property, and trade secrets.

36. The relation existing between Nueterra and Leiker demanded conditions of trust and confidence. In all transactions concerning and affecting the subject matter of her agency, it was Leiker's duty to act with the utmost good faith and loyalty for the furtherance and advancement of Nueterra's interests. Leiker was required to give Nueterra the benefit of all her knowledge and skill and was not entitled to withhold or conceal information from Nueterra. Leiker, who was highly compensated, had a duty to act solely for the benefit of Nueterra in all matters within the scope of her employment and to avoid conflicts between her duty to Nueterra and her own self-interest. Leiker was prohibited from acting in any manner inconsistent with her agency or trust and was at all times bound to exercise the utmost good faith and loyalty in the performance of her duties. *Fryetech, Inc. v. Harris*, 46 F. Supp. 2d 1144 (D. Kan. 1999).

37. Leiker was required to scrupulously honor her duty to disclose any self-interested transactions while she was a Nueterra employee. An agent occupying a place of trust and confidence is not permitted to put herself in a position in which her personal interests may come in conflict with her duty to her principal. She cannot assume a position which may afford the temptation to subordinate the interests of her principal to those of herself in the discharge of her duty. In order to be free from temptation, she is disabled from placing herself in such a position. *Pratt v. Shell Petroleum Corp.*, 100 F.2d 833, 836 (10th Cir. 1938).

38. The duty of good faith - simple honesty - required Leiker to inform Nueterra of her intentions. *Fryetech, Inc. v. Harris*, 46 F. Supp. 2d 1144, 1154 (D. Kan. 1999).

39. As set forth herein, Leiker did not act in good faith and did not act with simple honesty towards her employer while employed with Nueterra, but instead concealed her intentions from Nueterra, secretly formed Triple Aim Creative, LLC, and secretly began making unauthorized use of Nueterra's "Triple Aim Trade Secrets."

40. As a direct result of Leiker's breach of her fiduciary duty and duty of loyalty, Nueterra has been injured and damaged in an amount to be determined at trial, has been irreparably harmed, and is threatened with additional and continuing irreparable harm if Leiker is not enjoined as set forth in the Prayer for Relief herein, including but not limited to changing the name of Triple Aim Creative, LLC, taking down the offending website and LinkedIn page, stopping Leiker's other unauthorized use and disclosure of the Triple Aim Trade Secrets, and disgorging and paying to Nueterra all profits Leiker has earned to date through Triple Aim Creative, LLC.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS – KUTSA AGAINST LEIKER AND TRIPLE AIM CREATIVE

41. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

42. As set forth and identified above, Nueterra was in possession of proprietary, confidential, and trade secret information, as defined by the Kansas Uniform Trade Secrets Act, K.S.A. § 60-3320 et seq., including but not limited to Nueterra's "Triple Aim Trade Secrets" identified above.

43. Nueterra derived independent economic value from its "Triple Aim Trade Secrets."

44. Nueterra's "Triple Aim Trade Secrets" are (or, before Defendants' misappropriation, were) not generally known or readily ascertainable by proper means by other persons who could obtain economic value from their disclosure or use.

45. Nueterra's "Triple Aim Trade Secrets" were the subject of reasonable efforts by Nueterra to maintain their secrecy, including but not limited to the aforementioned

Confidentiality Agreements signed by Leiker and signed by the other Nueterra employees involved in the development or design of the Triple Aim Trade Secrets.

46. Leiker had a duty to maintain the secrecy of Plaintiffs' trade secrets.

47. As described above, Leiker and Triple Aim Creative have used, misappropriated, and disclosed for their own benefit Nueterra's "Triple Aim Trade Secrets," including but not limited to using the Triple Aim logo design created by Nueterra employees on the Triple Aim Creative, LLC website and LinkedIn page operated by Leiker.

48. Plaintiffs provided written notice to Leiker and Triple Aim Creative, LLC regarding their misappropriation of Nueterra's "Triple Aim Trade Secrets," but Leiker and Triple Aim Creative, LLC have continued to use and disclose the information. Leiker's and Triple Aim Creative, LLC's acts of misappropriation are continuing, willful, and malicious, and in disregard and with indifference to Plaintiffs' rights.

49. As a proximate result of Leiker's and Triple Aim Creative, LLC's misappropriation of Nueterra's "Triple Aim Trade Secrets," Leiker and Triple Aim Creative, LLC have been unjustly enriched; Nueterra has suffered, and will continue to suffer, damages in an amount to be proven at trial; and Nueterra has been irreparably harmed, and is threatened with additional and continuing irreparable harm if Leiker is not enjoined as set forth in the Prayer for Relief herein, including but not limited to changing the name of Triple Aim Creative, LLC, taking down the offending website and LinkedIn page, stopping Defendants' other unauthorized use and disclosure of the Triple Aim Trade Secrets, and disgorging and paying to Nueterra all profits attributable to the misappropriation.

## COUNT IV
## DEFEND TRADE SECRETS ACT
## AGAINST LEIKER AND TRIPLE AIM CREATIVE

50. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

51. The Defend Trade Secrets Act of 2016 (DTSA), enacted May 11, 2016 and codified at 18 U.S.C. § 1836, et seq., allows an owner of a trade secret to sue in federal court when its trade secrets have been misappropriated.

52. An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

53. As set forth above, Nueterra's Triple Aim Trade Secrets are trade secrets that relate to marketing services developed by its marketing team.

54. Nueterra does business in many states across the nation, and, if and when Nueterra made market use of the Triple Aim Trade Secrets at a time suitable to Nueterra, Nueterra intended to use its Triple Aim Trade Secrets as part of the marketing services it would offer in interstate commerce.

55. As set forth above, Leiker and Triple Aim Creative, LLC have misappropriated and are continuing to misappropriate Nueterra's Triple Aim Trade Secrets.

56. As set forth above, Nueterra has been damaged as a result of Leiker's and Triple Aim Creative, LLC's misappropriation of the Triple Aim Trade Secrets.

57. Under the DTSA, Nueterra is entitled to the damages for actual loss caused by Leiker's and Triple Aim Creative, LLC's misappropriation of the Triple Aim Trade Secrets. In addition, because Leiker and Triple Aim Creative willfully and maliciously misappropriated the Triple Aim Trade Secrets, Nueterra is further entitled to exemplary damages (in an amount not more than 2 times the amount of the actual damages) and attorney fees. The injunction under the DTSA is to include the following orders:

> (i) to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable, provided the order does not—
>
> > (I) prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows; or
> >
> > (II) otherwise conflict with an applicable State law prohibiting restraints on the practice of a lawful profession, trade, or business;
>
> (ii) if determined appropriate by the court, requiring affirmative actions to be taken to protect the trade secret; and
>
> (iii) in exceptional circumstances that render an injunction inequitable, that conditions future use of the trade secret upon payment of a reasonable royalty for no longer than the period of time for which such use could have been prohibited.

## COUNT V
## COMPUTER FRAUD AND ABUSE ACT – AGAINST LEIKER

58. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

59. Nueterra is entitled to bring this civil action under the Computer Fraud and Abuse Act to obtain compensatory damages and injunctive or other equitable relief pursuant to 18 U.S.C. § 1030(g) because Leiker's conduct involves one of the factors set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I).

60. Nueterra's computers are "protected computers" under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e)(2)(B).

61. Upon information and belief, following her termination from employment with Nueterra, Leiker kept a Microsoft Surface Pro Tablet ("Surface Pro") owned by Nueterra, refused demands for the return of that device, and used it for purposes that exceeded her authorized use of the device.

62. Upon information and belief, Leiker used the Surface Pro or other Nueterra-owned computers (such as the Nueterra-owned laptop that was issued to her) to download, back up, and otherwise misappropriate Nueterra's proprietary, confidential, and trade secrets information, including but not limited to the Triple Aim name, logos, and marks and other Triple Aim Trade Secrets.

63. Leiker's downloading or copying of Nueterra's electronic files constitutes "damage" under 18 U.S.C. 1030(e)(8).

64. The loss to Nueterra in the removal of confidential and trade secret information aggregates at least $5,000 in value.

65. Leiker exceeded her authorized access to and use of Nueterra's computers and computer system when she intentionally downloaded or copied files in violation of 18 U.S.C. § 1030(a)(2)(C), and in violation of 18 U.S.C. § 1030(a)(5)(A) through (C).

66. Upon demand from Nueterra's counsel, Leiker returned the Surface Pro, after she made attempts to "wipe" it.

67. As a proximate result of Leiker's violations of the CFAA, Nueterra has suffered, and will continue to suffer, at least $5,000 in damages in an amount to be proven at trial, Nueterra has been irreparably harmed, and Nueterra is threatened with additional and continuing irreparable harm if Leiker is not enjoined as set forth in the Prayer for Relief herein, including but not limited to changing the name of Triple Aim Creative, LLC, taking down the offending website and LinkedIn page, and stopping Defendants' other unauthorized use and disclosure of the Triple Aim Trade Secrets.

## COUNT VI
### USURPING CORPORATE OPPORTUNITIES – AGAINST LEIKER

68. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

69. As set forth above, Leiker, while still in her role as the Vice President of Marketing and Public Affairs for Nueterra, usurped and appropriated for herself the "Triple Aim" business opportunity, as manifested in part in the Triple Aim Business Plan and the Triple Aim Trade Secrets, an opportunity that in fairness should have belonged to Nueterra.

70. Leiker failed to meaningfully offer this business opportunity to Nueterra and, instead, took the opportunity for herself.

71. Under the corporate opportunity doctrine, corporate personnel are precluded from diverting unto themselves opportunities which in fairness ought to belong to the corporation.

72. Nueterra was financially able to undertake the opportunity; the opportunity was in the line of Nueterra's business and of practical advantage to Nueterra; the opportunity was one in which Nueterra had a continuing interest or a reasonable expectancy; the opportunity was adaptable to Nueterra's business and consonant with Nueterra's reasonable needs and aspirations for expansion; and, to the extent the opportunity was ever fairly and adequately presented to Nueterra, Nueterra did not reject the opportunity but was still in the process of developing it.

73. Leiker seized the Triple Aim business opportunity for herself under circumstances that were not fair and equitable, and she robbed Nueterra of the market advantages it would have realized by further developing and implementing the Triple Aim Business Plan and Triple Aim Trade Secrets as Nueterra saw fit and making its own determined initial use and disclosure of the Triple Aim name, mark, and logos in the marketplace.

74. As a proximate result of Leiker's usurpation of Nueterra's corporate business opportunity, Nueterra has suffered, and will continue to suffer, damages in an amount to be proven at trial, Nueterra has been irreparably harmed, and Nueterra is threatened with additional and continuing irreparable harm if Leiker is not enjoined as set forth in the Prayer for Relief

herein, including but not limited to changing the name of Triple Aim Creative, LLC, taking down the offending website and LinkedIn page, and stopping her other unauthorized use and disclosure of the Triple Aim Trade Secrets.

## COUNT VII
### UNFAIR COMPETITION AND LANHAM ACT CLAIMS AGAINST LEIKER AND TRIPLE AIM CREATIVE

75. Nueterra realleges and incorporates the allegations of the preceding paragraphs, including but not limited to paragraph 16, which defines Nueterra's "Triple Aim Trade Secrets" as, "The combination of the "Triple Aim" tradename, logos, and marks, the Triple Aim Business Plan, and other documents, logos, marks, designs, strategies, and ideas associated with same (collectively the "Triple Aim Trade Secrets").

76. As a general rule, Kansas unfair competition law provides a cause of action for the misuse of trademark or other intellectual property. *Accessible Techs., Inc. v. Paxton Auto. Corp.*, 2002 U.S. Dist. LEXIS 19278, *5 (D. Kan. Aug. 28, 2002).

77. Upon information and belief, Defendants' conduct constitutes the tort of unfair competition in the form of misappropriation and unauthorized use of Nueterra's proprietary, confidential and trade secrets information and trade or service marks, including Nueterra's Triple Aim Trade Secrets, for the purpose of competing unfairly against Nueterra.

78. Upon information and belief, Defendants' conduct further constitutes unfair competition under Section 43(a) of the Lanham Act.

79. Under Section 43(a) of the Lanham Act, 15 U.S.C. §1125:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

80. As set forth above, Nueterra is the owner of the Triple Aim Trade Secrets. Those Triple Aim Trade Secrets include words, terms, names, symbols, and various combinations thereof that, when used in commerce by Nueterra, will be valid and protectable marks (the "Triple Aim Marks").

81. As set forth above, Leiker's and Triple Aim Creative, LLC's marketing services, as identified and described on their website, are similar to Nueterra's intended marketing services, and Leiker and Triple Aim Creative, LLC are using precisely the same combination of the name "Triple Aim Creative" and the unique design logos developed by Nueterra's marketing team during Leiker's tenure. Accordingly, when Nueterra launches its marketing services utilizing its Triple Aim Marks, there is likely to be consumer confusion.

82. As a proximate result of Leiker's and Triple Aim Creative, LLC's unfair competition, Nueterra is threatened with irreparable harm if Leiker is not enjoined as set forth in the Prayer for Relief herein, including but not limited to changing the name of Triple Aim Creative, LLC, taking down the offending website and LinkedIn page, and stopping the other unauthorized use and disclosure of the Triple Aim Trade Secrets.

## COUNT VIII

### TORTIOUS INTERFERENCE -- AGAINST TRIPLE AIM CREATIVE

83. Nueterra realleges and incorporates the allegations of the preceding paragraphs.

84. Triple Aim Creative, LLC knew about Leiker's Confidentiality Agreements with Nueterra.

85. Triple Aim Creative caused Leiker to violate those Confidentiality Agreements.

86. Triple Aim Creative did so with intent to interfere with the ongoing restrictive covenant obligations of Leiker to Nueterra.

87. Nueterra has been damaged and is entitled to recover its damages resulting from Triple Aim Creative's interference.

## PRAYER FOR RELIEF

WHEREFORE, Nueterra respectfully requests the following relief:

A. Issuance of a temporary, preliminary and permanent injunction against Defendants:

1. Prohibiting Defendants from using the trade or service marks and the trade name "Triple Aim Creative" any time and anywhere, including but not limited to on any website or LinkedIn page, in the conduct of any business;

2. Prohibiting Defendants from conducting any business substantially similar to the business described in the Triple Aim "Business Plan";

3. Requiring Defendants to return to Nueterra all documents or things containing the trade or service marks or trade name "Triple Aim" or "Triple Aim Creative," including those currently on Defendants' website and LinkedIn pages;

4. Preventing Defendants from further using or disclosing any of the Triple Aim Trade Secrets or any other confidential or proprietary information of Nueterra;

5. Preventing Defendants from further misappropriation of Nueterra's trade secrets;

6. Requiring Defendants to take down the Triple Aim Creative website and LinkedIn page;

7. Requiring Defendants to change the name of Triple Aim Creative, LLC;

8. Requiring Defendants to disgorge and pay to Nueterra all profits realized by Triple Aim Creative, LLC; and

9. Preventing Defendants from making any use of Nueterra's proprietary, confidential and trade secrets information to contact Nueterra's customers or impair Nueterra's relationships with its clients or vendors or to take any action that may be detrimental to Nueterra's business.

B. Final judgment in favor of Nueterra against Defendants in an amount yet to be determined, but potentially in excess of $75,000, including compensatory damages, consequential and incidental damages, exemplary and punitive damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

**C.** All other and further relief to which Nueterra may be entitled.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: *__/s/ Scott C. Nehrbass__*
Scott C. Nehrbass, KS #16285
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS 66210-2000
(913) 498-2100
(913) 498-2101 FAX
Email: snehrbass@foulston.com

ATTORNEYS FOR PLAINTIFF

**FIRST VERIFICATION**

I, Lori Carr, Senior Vice President of Human Resources for Nueterra, upon my oath depose and state that I have read the above and foregoing Verified Petition, have personal knowledge of the matters set forth therein either from my own personal knowledge or from knowledge imparted to me by other Nueterra representatives, and declare that the matters are true and correct to the best of my knowledge.

Lori Carr

Lori Carr

STATE OF KANSAS )
) ss.
JOHNSON COUNTY )

BE IT REMEMBERED, that on this 30th day of August, 2017, before me, a Notary Public within and for the County and State aforesaid, came Lori Carr of Nueterra, who executed the foregoing.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at Overland Park, Kansas, the day, month, and year last above written.

G McCullough

Notary Public

My Appointment Expires:

June 14, 2020

GINA MCCULLOUGH
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 6-14-2020

**SECOND VERIFICATION**

I, Denise Mayhew, CAO for Nueterra, upon my oath depose and state that I have read the above and foregoing Verified Petition, have personal knowledge of the matters set forth therein either from my own personal knowledge or from knowledge imparted to me by other Nueterra representatives, and declare that the matters are true and correct to the best of my knowledge.

Denise Mayhew

STATE OF KANSAS )
) ss.
JOHNSON COUNTY )

BE IT REMEMBERED, that on this __ day of August, 2017, before me, a Notary Public within and for the County and State aforesaid, came Denise Mayhew of Nueterra, who executed the foregoing.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at Overland Park, Kansas, the day, month, and year last above written.

GINA MCCULLOUGH
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 6/14/2020

Notary Public

My Appointment Expires:
June 14 2020