IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **NUETERRA CAPITAL ADVISORS, LLC, et al.,**<br><br>       **Plaintiffs,**<br><br>v.<br><br>**AMY LEIKER, et al.,**<br><br>       **Defendants.** | **CONSOLIDATED CASES**<br><br><br>**Case No. 17-2501-DDC-JPO** |
| **AMY LEIKER,**<br><br>       **Plaintiff,**<br><br>v.<br><br>**NUETERRA CAPITAL ADVISORS, LLC, et al.,**<br><br>       **Defendants.** | **Case No. 17-2703-DDC-JPO** |

## **MEMORANDUM AND ORDER[1]**

Plaintiffs Nueterra Capital Advisors, LLC, Nueterra Holdings Management, LLC, and Nueterra Healthcare Management, LLC bring this lawsuit against defendants Amy Leiker and Triple Aim Creative, LLC, alleging several claims including ones asserting that: defendants have breached confidentiality and loyalty obligations; misappropriated trade secrets; and engaged in unfair competition. Defendants have filed a Motion to Dismiss Complaint or, in the Alternative, Motion for a More Definite Statement. Doc. 10. For reasons explained below, the court grants defendants' motion in part and denies it in part.

---

[1] This Memorandum and Order rules on defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement (Doc. 10) filed in the lead case, Case No. 17-2501-DDC-JPO.

**I.       Factual and Procedural Background**

The following facts are taken from plaintiffs' Complaint. Doc. 1. The court accepts them as true and views them in the light most favorable to plaintiffs. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Plaintiff Nueterra Capital Advisors, LLC ("Nueterra Capital") is a Kansas limited liability company, plaintiff Nueterra Holdings Management, LLC ("Nueterra Holdings") is a Delaware limited liability company, and plaintiff Nueterra Healthcare Management, LLC ("Nueterra Healthcare") is a Delaware limited liability company. All three plaintiffs have their principal place of business in Leawood, Kansas. Plaintiffs' Complaint refers to these three entities collectively as "Nueterra," a convention the court follows when reciting the facts below.

Nueterra develops, owns, and manages various healthcare facilities, including ambulatory surgery centers and community hospitals, throughout the United States. Nueterra provides various services to the healthcare facilities it owns and manages, including marketing services.

Defendant Amy Leiker served as the Vice President of Marketing and Public Affairs for Nueterra Capital from January 2014 through April 30, 2017, and for Nueterra Holdings from May 1, 2017 to June 7, 2017. In this position, Ms. Leiker was responsible for direction and oversight of the entire marketing department, including overseeing the creative and design teams, director of on-line marketing, event planners, and communications specialists. Ms. Leiker was well compensated for her work in this position. Ms. Leiker's position also afforded her constant access to proprietary and confidential information about Nueterra's marketing plans and methods, clients, and business practices.

When Ms. Leiker began her employment, she signed the "Nueterra HIPAA and Confidentiality Agreement" on January 6, 2014. Doc. 3-1. The same day, she also signed the "Confidentiality Agreement." Doc. 3-2. Under the Nueterra HIPAA and Confidentiality Agreement, Ms. Leiker agreed that she had "no right or ownership interest" in any "Confidential Information" she might receive and that she would "appropriately safeguard Confidential Information so as to prevent any inappropriate use or disclosure." Doc. 3-1 at 2–3. Also, Ms. Leiker agreed that "Confidential Information" included "Business Operations Information," defined as "[i]nformation relating to Nueterra's business operations." *Id.* at 1. Ms. Leiker also agreed that any "use or disclosure of Confidential Information for any reason other than the performance of [her] assigned job duties . . . constitute[s] misuse of Confidential Information." *Id.* at 2. And she agreed that her "obligations under this Agreement will continue after termination of [her] relationship (employment or otherwise) with Nueterra." *Id.*

Under the Confidentiality Agreement, Ms. Leiker acknowledged that she would "have access to and learn of unique and valuable information" during her employment, "the disclosure of which would injure Nueterra." Doc. 3-2 at 1. Ms. Leiker agreed not to use or disclose "Proprietary Information," including but not limited to "any information relating to marketing or the marketing methods or business plan of Nueterra," "information concerning services, . . . styles, . . . strategies, . . . customers, . . . advertising, promoting, . . . and sales," and "any other information determined to be confidential or proprietary by Nueterra," with the understanding that even "[i]nformation that is not novel or copyrighted may nonetheless be proprietary information." *Id.* Ms. Leiker agreed that the parties could bring an enforcement action based on violations of the Confidentiality Agreement and the "prevailing party in such dispute shall be

3

entitled to collect such party's fees and costs from the other party, including without limitation court costs and reasonable attorneys' fees." *Id.* at 3.

In late 2016, Ms. Leiker's marketing team developed business plans and intellectual property under the moniker "Triple Aim." These plans included tradenames, logos, and marks. The individuals who created the tradenames, logos, and marks were employed by either Nueterra Capital or Nueterra Holdings. Ms. Leiker and another member of the marketing team also developed a written, six-page "Business Plan" entitled "Triple Aim Creative Targeted Healthcare Marketing." Nueterra asserts that the Triple Aim tradename, logos, and marks and the Triple Aim Business Plan are Nueterra's confidential and proprietary business information and trade secrets.

On January 17, 2017, while Nueterra still employed Ms. Leiker, she formed for herself a company she called Triple Aim Creative, LLC ("Triple Aim Creative")—the other named defendant in this lawsuit. Ms. Leiker is the sole owner of Triple Aim Creative. Nueterra asserts that Ms. Leiker formed Triple Aim Creative intending to and for the purpose of competing against Nueterra. Nueterra also asserts that Ms. Leiker formed Triple Aim Creative for the purpose of making unauthorized and competitive use of the Triple Aim trade secrets, including the proprietary and confidential names, marks, and logos that the Nueterra marketing team had developed under her supervision.

On June 7, 2017, Ms. Leiker's employment with Nueterra terminated. At termination, Ms. Leiker did not return to Nueterra the Nueterra-owned Microsoft Surface Pro tablet device that Nueterra had issued to her. Ms. Leiker did not have permission to take or use the device. When Nueterra asked her to return the device, she refused. Nueterra then sent Ms. Leiker a written demand for the device. But Ms. Leiker still refused to return it. Nueterra asserts that Ms.

Leiker used the Nueterra-owned Microsoft Surface Pro tablet device (or the laptop she was using while employed at Nueterra to form and establish Triple Aim Creative) to develop and launch her competitive website and Linkedin page, and to make unauthorized use and disclosure of the Triple Aim trade secrets.

On August 18, 2017, Nueterra's counsel sent a letter to Ms. Leiker's counsel. It again demanded that Ms. Leiker return the Nueterra-owned Microsoft Surface Pro tablet device. On August 21, 2017, Ms. Leiker returned the device to Nueterra's offices after she had attempted to wipe all data from the device.

During her employment, Ms. Leiker had access to the identities and contact information for Nueterra-affiliated facilities and other Nueterra actual or potential customers, as well as the marketing needs of those facilities and customers. This information constitutes Nueterra's proprietary and confidential information. Nueterra asserts that Ms. Leiker has used this proprietary information, as well as Nueterra's intellectual property (*i.e.*, the Triple Aim trade secrets), to contact and solicit business from Nueterra-affiliated facilities or Nueterra's other actual or potential customers.

On August 30, 2017, the Nueterra plaintiffs filed this lawsuit—No. 17-2501—against Ms. Leiker and Triple Aim Creative based on defendants' purported use of Nueterra's confidential information and misappropriation of trade secrets. Plaintiffs assert eight claims in it: (1) breach of confidentiality agreement against Ms. Leiker (Count I); (2) breach of fiduciary duty and duty of loyalty against Ms. Leiker (Count II); (3) misappropriation of trade secrets violating the Kansas Uniform Trade Secrets Act ("KUTSA") against both defendants (Count III); (4) Defend Trade Secrets Act ("DTSA") violation against both defendants (Count IV); (5) Computer Fraud and Abuse Act ("CFAA") violation against Ms. Leiker (Count V); (6) usurping corporate

opportunities against Ms. Leiker (Count VI); (7) unfair competition and Lanham Act violation against both defendants (Count VII); and (8) tortious interference against Triple Aim Creative (Count VIII).  Defendants ask the court to dismiss each of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failing to state a claim for relief.  Alternatively, defendants ask the court to order plaintiffs to file a more definite statement.  The court addresses defendants' requests below.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A party may move to dismiss a complaint under Rule 12(b)(6) if the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009)

("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

Also, a party may move for a more definite statement under Rule 12(e) when the complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) motions generally are disfavored and "are properly granted only when a party is unable to determine the issues" to which he must respond. *Resolution Trust Corp. v. Thomas*, 837 F. Supp. 354, 356 (D. Kan. 1993). "A motion for more definite statement should not be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission." *Advantage Homebuilding, LLC v. Assurance Co. of Am.*, No. 03-2426-KHV, 2004 WL 433914, at *1 (D. Kan. Mar. 5, 2004). Also, a party cannot invoke Rule 12(e) as a method of pretrial discovery. *See Hix Corp. v. Nat'l Screen Printing Equip., Inc.*, No. 00-2111-KHV, 2000 WL 1026351, at *1 (D. Kan. July 6, 2000) (denying motion for more definite statement because "the appropriate method to determine more specific information about the allegations is through the discovery process"); *see also Advantage Homebuilding*, 2004 WL 1026351, at *1 (explaining that Rule 12(e) motions are disfavored "in light of liberal discovery available under the federal rules"). The decision whether to grant or deny a motion for more definite statement lies within the sound discretion of the court. *Graham v. Prudential Home Mortg. Co., Inc.*, 186 F.R.D. 651, 653 (D. Kan. 1999).

**III.   Analysis**

Defendants assert seven arguments supporting their Motion to Dismiss, or in the Alternative, Motion for More Definite Statement. The court addresses each argument, in turn, below.

*First*, defendants assert that the court must dismiss plaintiffs' breach of contract claim (Count I) and tortious interference claim (Count VIII) because the Complaint fails to allege the existence of a valid contract to support these claims.  Defendants contend that Ms. Leiker never worked for the other party to the contracts, *i.e.*, Nueterra Healthcare.  Thus, defendants contend, no consideration ever supported the contracts.  So, defendants assert, plaintiffs' breach of contract claim (Count I) fails as a matter of law because no contract exists to support the claim.  Defendants also assert that plaintiffs' tortious interference claim (Count VII) fails as a matter of law because Triple Aim Creative could not have interfered tortiously with a non-existent contract.

Plaintiffs respond, asserting that their Complaint never identifies Ms. Leiker merely as an employee of Nueterra Capital and Nueterra Holdings but not Nueterra Healthcare.  Indeed, plaintiffs' Complaint asserts that Ms. Leiker *served* as the Vice President of Marketing and Public Affairs for Nueterra Capital from January 2014 through April 30, 2017, and for Nueterra Holdings from May 1, 2017 to June 7, 2017.  Plaintiffs explain that Ms. Leiker's *service* in these positions was not confined just to the two Nueterra entities.  Instead, plaintiffs contend, Ms. Leiker performed her duties for the larger group of Nueterra entities, including Nueterra Healthcare.  Indeed, the Complaint asserts that Nueterra—in the collective sense that the Complaint defines this term—employed Ms. Leiker.  *See*, *e.g.*, Doc. 1 ¶ 10 ("When she began employment with Nueterra . . . ."), ¶ 14 ("While she was an employee of Nueterra . . . ."), ¶ 21 ("[Ms.] Leiker's employment with Nueterra was terminated on or about June 7, 2017.").  Taking these facts as true and construing them in plaintiffs' favor, the court cannot conclude—at the pleading stage—that the Complaint never identifies Nueterra Healthcare as one of Ms. Leiker's employers.

Also, plaintiffs assert, Nueterra Healthcare is not the only Nueterra entity to whom Ms. Leiker owed contractual duties of confidentiality. They argue that the Nueterra HIPAA and Confidentiality Agreement covers the broader range of Nueterra entities—not just Nueterra Healthcare. The Agreement contains a copyright notice at the bottom of each page identifying Nueterra Healthcare as the copyright holder. *See generally* Doc. 3-1. But the Agreement itself refers generally to Nueterra—and not to any one entity specifically. Also, the Confidentiality Agreement was entered between Ms. Leiker and Nueterra Healthcare. Doc. 3-2. But the Agreement contemplates assignment "by Nueterra to a subsidiary or successor entity." Doc. 3-2 at 3. And it appears to contemplate Nueterra's corporate structure by referring to multiple Nueterra CEOs. *Id.* at 1–2.

Defendants assert in their Reply that these allegations leave an unsolved "mystery" about which Nueterra entity is suing Ms. Leiker for breach of contract. Doc. 20 at 4. It's not a mystery. All three Nueterra entities are suing Ms. Leiker for breach of contract. Doc. 1 ¶¶ 28–32. All three assert that Ms. Leiker owed them contractual obligations of confidentiality under these contracts. *Id.* ¶ 29. At this stage of the litigation, the court cannot conclude that plaintiffs' breach of contract claim fails as a matter of law for lack of consideration to support the contracts. Perhaps additional facts revealed in discovery may show that one or more Nueterra entities lack standing to assert a breach of contract claim. But, viewing the facts alleged in the Complaint in plaintiffs' favor, plaintiffs sufficiently have alleged both the existence of a contract that imposed confidentiality obligations on Ms. Leiker and that she owed duties to each Nueterra entity. If true, these allegations could support each plaintiff's breach of contract and tortious interference claims. The claims thus survive Rule 12(b)(6) dismissal. The court also concludes that plaintiffs' allegations are sufficiently specific to allow defendants to prepare a responsive

pleading. *See OMB Police Supply, Inc. v. Elbeco, Inc.*, No. 00-2518-KHV, 2001 WL 681575, at *5 (D. Kan. May 11, 2001) (concluding that plaintiff need not file a more definite statement when the complaint alleged specific transactions that "involved two defendants" and "put defendants on fair notice [of] the nature of the claim, the products involved, and the parties involved in the allegedly unlawful conduct"). And so the court declines to order plaintiffs to file a more definite statement.

*Second*, defendants assert that the court should dismiss Nueterra Healthcare and Nueterra Holdings from the breach of fiduciary duty and duty of loyalty claim (Count II). Defendants argue that Nueterra Healthcare cannot assert this claim because it never employed Ms. Leiker. Thus, defendants reason, she never owed any fiduciary or loyalty duties to Nueterra Healthcare. And, defendants contend, Nueterra Holdings cannot assert the claim because the Complaint alleges that Ms. Leiker formed Triple Aim Creative using plaintiffs' proprietary and confidential information in 2016—when Ms. Leiker was working for Nueterra Capital but not Nueterra Holdings. Thus, defendants contend, the Complaint never alleges that Ms. Leiker owed any fiduciary and loyalty duties to Nueterra Holdings when she purportedly breached those obligations. Alternatively, defendants assert that the court should require plaintiffs to file a more definite statement to support this claim.

The court rejects defendants' arguments for the same reasons it dismissed them above. Plaintiffs' Complaint never asserts that Nueterra Healthcare did not employ Ms. Leiker. Also, the Complaint does not limit Ms. Leiker's employment to Nueterra Capital in 2016. Instead, the Complaint merely identifies that Ms. Leiker *served* as Vice President of Marketing and Public Affairs for Nueterra Capital in 2016. Construing the Complaint's allegations in plaintiffs' favor—as the court must at this stage of the case—the Complaint alleges that Ms. Leiker owed

10

fiduciary and loyalty duties to all three Nueterra entities.  The court thus concludes that plaintiffs sufficiently state a claim for breach of fiduciary duty and the duty of loyalty in Count II.

*Third*,  defendants assert that the court should dismiss the KUTSA claim (Count III) because the Complaint never alleges that defendants misappropriated any trade secrets.  Alternatively, defendants assert that even if the Complaint identifies a trade secret, then the court should require plaintiffs to file a more definite statement reciting which of the Nueterra entities owns the trade secret.

Plaintiffs assert that the "KUTSA only prohibits misappropriation of 'trade secrets'" but not "nontrade secrets, *e.g.*, mere confidential information . . . ."  *Wolfe Elec., Inc. v. Duckworth*, 266 P.3d 516, 523 (Kan. 2011).  Here, the Complaint alleges that defendants misappropriated Nueterra trade secrets.  The allegedly purloined trade secrets include the Triple Aim Business Plan, the Triple Aim tradename, logos, and marks, and other documents, logos, marks, designs, strategies, and ideas associated with the same.  Doc. 1 ¶¶  15, 17, 18, 47.  The Complaint asserts that these items were "confidential and proprietary business information" *and* "trade secrets" of Nueterra.  *Id.* ¶ 16.  As plaintiffs' Response acknowledges, plaintiffs recognize that the KUTSA requires them to establish that these items qualify as "trade secrets" under the definition of that term adopted by the KUTSA.  And, perhaps after discovering more facts, defendants can establish at summary judgment that these items cannot support a KUTSA claim as a matter of law because they merely constitute confidential information and not "trade secrets" under Kansas law.  But, at this stage of the litigation, plaintiffs have alleged sufficient facts to support a claim that defendants misappropriated certain information, including the Triple Aim Business Plan, that constitute "trade secrets" under the KUSTA.  The court cannot evaluate the factual *bona fides* of those allegations on a motion to dismiss.

Also, the Complaint adequately asserts that all three Nueterra entities own the alleged trade secrets. This information suffices to place defendants on notice of the KUSTA claims that all three Nueterra plaintiffs assert against them. The court thus rejects defendants' argument that plaintiffs must provide a more definite statement to identify the specific owner of each trade secret.

*Fourth*, defendants argue that the court should require plaintiffs to identify which one of them owns the trade secrets that support the DTSA claim (Count IV). The DTSA permits the "owner of a trade secret that is misappropriated" to "bring a civil action" under the Act "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. Here, plaintiffs' Complaint asserts that Nueterra (the collective term) owns the Triple Aim trade secrets and that defendants misappropriated those trade secrets, violating the DTSA. Doc. 1 ¶¶ 52, 53, 55. These allegations are sufficient for all three Nueterra plaintiffs to assert a DTSA claim against defendants. Indeed, defendants cite no legal authority requiring multi-plaintiff litigants to identify their specific ownership interest in trade secrets as a prerequisite to a DTSA claim. Here, plaintiffs allege that all three plaintiffs are owners—jointly—of trade secrets that defendants purportedly misappropriated. These allegations adequately state a claim for relief under the DTSA and the court declines to require more specific allegations about ownership. Defendants may acquire that information through discovery.

*Fifth*, defendants contend that plaintiffs' Complaint fails to assert a violation of the CFAA (Count V) because it never asserts that Ms. Leiker accessed Nueterra's computers without authorization. The CFAA prohibits an individual from "knowingly access[ing] a computer without authorization or exceeding authorized access . . . ." 18 U.S.C. § 1030. Defendants argue that plaintiffs' Complaint alleges that Ms. Leiker was authorized to access Nueterra's computers

12

during her employment but never alleges that she accessed those computers after her employment ended. So, defendants contend, the Complaint fails to state a claim under CFAA. Plaintiffs respond, asserting that defendants have misread the Complaint's allegations. Paragraph 61 of plaintiffs' Complaint asserts:

> Upon information and belief, *following her termination from employment with Nueterra*, [Ms.] Leiker kept a Microsoft Surface Pro Tablet ("Surface Pro") owned by Nueterra, refused demands for the return of that device, *and used it for purposes that exceeded her authorized use of the device*.

Doc. 1 ¶ 61 (emphasis added). These allegations sufficiently allege that Ms. Leiker accessed Nueterra's computers after her termination and for purposes exceeding her authorized use. Plaintiffs thus have stated a viable CFAA claim against Ms. Leiker.

In their Reply, defendants direct the court to other paragraphs of the Complaint that, they contend, allege that Ms. Leiker accessed information during her employment—when she was authorized to access the information. Defendants correctly argue that these facts cannot state a CFAA claim. And they ask the court to dismiss any CFAA claims based on such allegations. The court need not parse through the Complaint's allegations and specify certain allegations as stating a claim while declaring that others do not. For now, plaintiffs have provided a short and plain statement to support their CFAA claim. The court finds these allegations sufficient to survive a Rule 12(b)(6) dismissal motion.

Defendants also ask the court to order plaintiffs to file a more definite statement to identify which of the Nueterra entities owns the computers that Ms. Leiker purportedly accessed. For the same reasons already discussed, the court denies the request. The Complaint sufficiently alleges that Ms. Leiker accessed information without authorization that belonged to all three Nueterra entities. To the extent defendants seek to challenge the assertion that all Nueterra entities own the information accessed, they can use the discovery process to ascertain the facts

supporting or refuting the ownership interest of each Nueterra entity in the information that Ms. Leiker allegedly accessed without authority.

*Sixth*, defendants ask the court to dismiss plaintiffs' usurping corporate opportunities claim (Count VI) for those plaintiffs who don't assert a corporate opportunity that Ms. Leiker allegedly usurped.  Here, yet again, defendants contend that the Complaint fails to identify which Nueterra entity owned a right to the corporate opportunity that Ms. Leiker alleged usurped.  But the Complaint alleges that that Ms. Leiker usurped and appropriated for herself a business opportunity that should have belonged to Nueterra—the collective Nueterra. Doc. 1. ¶¶ 69–74. The Complaint adequately alleges that all three Nueterra plaintiffs are asserting the claim against Ms. Leiker because, plaintiffs contend, the business opportunity belonged to all Nueterra entities.

*Finally*, defendants assert that plaintiffs' unfair competition and Lanham Act (Count VII) claim fails to state a claim for relief because plaintiffs never allege that they used Triple Aim as a trademark.  Plaintiffs assert their unfair competition and Lanham Act claim in a single count because "[t]rademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citations omitted).

The Lanham Act prohibits any person from using, in connection with any goods, "any word, term, name, symbol, or device, or any combination thereof" which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1).  To state a viable

Lanham Act claim, a plaintiff must allege: "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (citations and internal quotation marks omitted).

Here, defendants assert, plaintiffs' Complaint fails to allege facts capable of supporting a finding or inference of the first element—*i.e.*, a protectable interest—because the Complaint alleges that plaintiffs never have used the marks in commerce. Indeed, plaintiffs' Complaint asserts future use of the purported marks—but not a past or present use. *See* Doc. 1 ¶ 80 ("Nueterra is the owner of the Triple Aim Trade Secrets . . . that, *when used in commerce by Nueterra, will be valid and protectable* marks . . . ." (emphasis added)).

The Supreme Court has explained that "[r]ights in a trademark are determined by the date of the mark's first use in commerce." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). *See also Syrus v. Bennett*, 455 F. App'x 806, 810 (10th Cir. 2011) ("[T]rademark rights 'grow[ ] out of . . . use' and do not 'depend upon novelty, invention, discovery, or any work of the brain.'" (quoting *In re The Trade-Mark Cases*, 100 U.S. 82, 94 (1879))); *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 2591329, at *4 (D. Kan. Aug. 21, 2009) ("Rights to a trademark are acquired by use and not by registration." (citations omitted)). And "to qualify for trademark protection under federal law, a mark must be 'use[d] in commerce,' which means 'the bona fide use of a mark in the ordinary course of trade' on 'goods' or 'services.'" *Syrus*, 455 F. App'x at 810 (first quoting 15 U.S.C. § 1114(1)(a); then quoting 15 U.S.C. § 1127).

Plaintiffs respond to defendants' argument, asserting that the plain language of the Lanham Act permits them to bring their claim "once plaintiffs enter the market with their rightful intellectual property." Doc. 16 at 5. But plaintiffs provide no legal authority for this proposition.

And they also fail to explain how the facts alleged here satisfy the requirement that a plaintiff must allege a protectable interest in a trademark to assert a plausible Lanham Act claim. Because plaintiffs' Complaint includes no facts capable of supporting an inference or finding that plaintiffs have used their marks in commerce, the court concludes that plaintiffs have not alleged sufficiently that they have a protectable interest in a trademark to support a plausible unfair competition or Lanham Act claim. The court thus dismisses Count VII.

### IV. Conclusion

For reasons explained above, the court grants defendants' Motion to Dismiss Complaint or, in the Alternative, Motion for a More Definite Statement in part and denies it in part. The court finds that plaintiffs' Complaint fails to state an unfair competition and Lanham Act claim (Count VII). The court thus dismisses Count VII from the action. The court denies defendants' motion in all other respects.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss Complaint or, in the Alternative, Motion for a More Definite Statement (Doc. 10) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 14th day of March, 2018, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
